**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| JEAN DOWLING; JAMES BOLLENGIER; BRENDA MORSE; BRIAN MENDEZ, AMY MENDEZ, INDIVIDUALLY AND AS NATURAL PARENT AND PERSONAL REPRESENTATIVE FOR , M.M.; BEVERLY VOLNER, JAMES VOLNER; DAWNA WORCESTER; RICHARD SLIDE, ERIN SLIDE, INDIVIDUALLY AND AS NATURAL PARENT AND PERSONAL REPRESENTATIVE FOR , C.S. AND M.S.; JONATHAN KILEY, JENNIFER KILEY, INDIVIDUALLY AND AS NATURAL PARENT AND PERSONAL REPRESENTATIVE FOR , A.K., K.K., E.K.1 AND E.K.2; APRIL PROVENCHER, PHYLLIS PROVENCHER, RICHARD PROVENCHER; INDIVIDUALLY AND ON BEHALF OF ALL THOSE SIMILARLY SITUATED, | **JURY TRIAL DEMANDED** <br><br><br> **CLASS ACTION COMPLAINT** |
| *Plaintiffs,* | |
| v. | |
| SAINT-GOBAIN   PERFORMANCE   PLASTICS CORP., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO CHEMFAB, | |
| *Defendant*. | |

Plaintiffs, JEAN DOWLING; JAMES BOLLENGIER; BRENDA MORSE; BRIAN MENDEZ, AMY MENDEZ, INDIVIDUALLY AND AS NATURAL PARENT AND PERSONAL REPRESENTATIVE FOR, M.M.; BEVERLY VOLNER, JAMES VOLNER; DAWNA WORCESTER; RICHARD SLIDE, ERIN SLIDE, INDIVIDUALLY AND AS NATURAL PARENT AND PERSONAL REPRESENTATIVE FOR, C.S. AND M.S.; JONATHAN KILEY, JENNIFER KILEY, INDIVIDUALLY AND AS NATURAL PARENT AND PERSONAL REPRESENTATIVE FOR, A.K., K.K., E.K.1 AND E.K.2; APRIL PROVENCHER, PHYLLIS PROVENCHER, RICHARD PROVENCHER; individually and on behalf of all others similarly situated, by and through undersigned counsel, hereby alleges:

## INTRODUCTION

1.      The communities of Merrimack and Litchfield are located in Southern New Hampshire.

2.      They are nearby and down gradient of the site located at 701 Daniel Webster Highway, Merrimack, New Hampshire (the "Facility"), currently owned by Defendant Saint-Gobain Performance Plastics Corp. ("Saint-Gobain").

3.      Saint-Gobain's facilities have been linked to the contamination of surface and groundwater with perfluorooctanoic acid ("PFOA"), perfluorooctanesulfonic acid ("PFOS") and, and other manufactured compounds (collectively perfluorinated compound ("PFCs")) throughout the country, including in Hoosick Falls, New York and Bennington, Vermont.

4.      PFCs have been detected at levels exceeding the current EPA Health Advisory Limit of 70 parts per trillion (ppt) in the groundwater that provides water to these communities through both municipal water systems and private wells.

5.      For decades, Defendant, as operator of a plastics plant on Daniel Webster Highway in Merrimack, used PFCs to manufacture products resistant to heat, stain, and water, carelessly discharged PFCs into the environment, contaminating the groundwater and water supply of Merrimack and Litchfield, New Hampshire.

6.      The New Hampshire Department of Environmental Services ("NHDEH") has identified Saint-Gobain as the party responsible for contaminating the groundwater and water supply in Merrimack and Litchfield with PFCs.[1]

7.      Plaintiffs, individually and on behalf of all others similarly situated, seek recovery from Defendant for injuries, damages and losses suffered by the Plaintiffs, who suffered injuries as a result of exposure to the introduction of PFCs and other toxic substances into the groundwater of

---

[1] http://des.nh.gov/organization/commissioner/documents/pfoa-saint-gobain-20160401.pdf

Merrimack and Litchfield, in an amount to exceed $5,000,000, exclusive of interest, costs, and attorneys' fees.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because Saint-Gobain Performance Plastics Corp. has its principal place of business in Pennsylvania , and the amount in controversy exceeds $5,000,000.

9.      Venue is proper in this Court because Defendant conducts substantial business in this District and Plaintiffs' claims arose in this judicial district, pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS AS TO ALL COUNTS

**PLAINTIFFS**

10.      Plaintiff Jean Dowling is a citizen and resident of Merrimack, New Hampshire. She resides at 10 Harwich Court, Merrimack, New Hampshire, 03054. The property was purchased in 2001 and has decreased in value since disclosure of PFCs contamination in the area. Ms. Dowling obtains water from a municipal well which has tested positive for PFC contamination.

11.      Plaintiff Jean Dowling has been exposed to high levels of PFCs, and is at an increased risk of several health effects, including but not limited to effects on the liver and the immune system, high cholesterol, changes in thyroid hormone, as well as kidney and other cancers.

12.      Plaintiff Jean Dowling has a legitimate fear of developing cancer and/or other diseases as a result of the PFC exposure she has sustained.

13.      Plaintiff James Bollengier is a citizen and resident of Merrimack, New Hampshire. He resides at 36 Constance Street, Merrimack New Hampshire, 03054 with his wife Brenda Morse. The property was purchased in 1997 and has decreased in value since disclosure of PFCs

contamination in the area. Mr. Bollengier and Mrs. Morse obtain water from a municipal well which has tested positive for PFC contamination.

14.      Plaintiff James Bollengier has been exposed to high levels of PFCs, and is at an increased risk of several health effects, including but not limited to effects on the liver and the immune system, high cholesterol, changes in thyroid hormone, as well as kidney, testicular and other cancers.

15.      Plaintiff James Bollengier has a legitimate fear of developing cancer and/or other diseases as a result of the PFC exposure he has sustained.

16.      Plaintiff Brenda Morse is a citizen and resident of Merrimack, New Hampshire. She resides at 36 Constance Street, Merrimack, New Hampshire, 03054 with her husband James Bollengier. The property was purchased in 1997 and has decreased in value since disclosure of PFCs contamination in the area. Mr. Bollengier and Mrs. Morse obtain water from a municipal well which has tested positive for PFC contamination.

17.      Plaintiff Brenda Morse has been exposed to high levels of PFCs, and is at an increased risk of several health effects, including but not limited to effects on the liver and the immune system, high cholesterol, changes in thyroid hormone, as well as kidney and other cancers.

18.      Plaintiff Brenda Morse has a legitimate fear of developing cancer and/or other diseases as a result of the PFC exposure he has sustained.

19.      Plaintiff Brian Mendez is a citizen and resident of Merrimack, New Hampshire. He resides at 63 Donovan Court, Merrimack, NH 03054 with his wife Amy Mendez and their child. The property was purchased in 2005, and has decreased in value since the disclosure of PFC contamination in the area. The Mendez's obtain water from a municipal well which has tested positive for PFC contamination.

4

20.    Plaintiff Brian Mendez has been exposed to high levels of PFCs, and is at an increased risk of several health effects, including but not limited to effects on the liver and the immune system, high cholesterol, changes in thyroid hormone, as well as kidney, testicular and other cancers.

21.    Plaintiff Brian Mendez has a legitimate fear of developing cancer and/or other diseases as a result of the PFC exposure he has sustained.

22.    Plaintiff Amy Mendez is a citizen and resident of Merrimack, New Hampshire. She resides at 63 Donovan Court, Merrimack, NH 03054 with her husband Brian and their child. The property was purchased in 2005 and has decreased in value since the disclosure of PFC contamination in the area. The Mendez's obtain water from a municipal well which has tested positive for PFC contamination.

23.    Plaintiff Amy Mendez has been exposed to high levels of PFOA has been diagnosed with High Blood Pressure and Cholesterol, and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, changes in thyroid hormone, and kidney and other cancers.

24.    Plaintiff Amy Mendez has a legitimate fear of developing cancers and/or other diseases as a result of the PFC exposure she has sustained.

25.    Plaintiffs Brian and Amy Mendez's minor child, M.M, is a citizen of Merrimack, New Hampshire, and reside at 63 Donovan Court, Merrimack, NH 03054. The minor child has been exposed to high levels of PFC, and is at an increased risk of several health effects including but not limited to effects on the liver and the immune system, high blood pressure and cholesterol, as well as kidney, testicular and other cancers.

26.    Plaintiffs Brian and Amy Mendez have a legitimate fear of their minor child developing cancer and/or other diseases as a result of the exposure they have sustained.

27.     Plaintiff Beverly Volner is a citizen and resident of Merrimack, New Hampshire. She resides at 5 Deer Run, Merrimack, New Hampshire, 03054 with her husband James Volner. The property was purchased in 1981 and has decreased in value since disclosure of PFCs contamination in the area. The Volners obtain water from a municipal well which has tested positive for PFC contamination.

28.     Plaintiff Beverly Volner has been exposed to high levels of PFCs, and is at an increased risk of several health effects, including but not limited to effects on the liver and the immune system, high cholesterol, changes in thyroid hormone, as well as kidney and other cancers.

29.     Plaintiff Beverly Volner has a legitimate fear of developing cancer and/or other diseases as a result of the PFC exposure he has sustained.

30.     Plaintiff James Volner is a citizen and resident of Litchfield, New Hampshire, residing at 5 Deer Run, Litchfield, NH 03052. He has owned the property with his wife, Beverly Volner, since 1981, and the property has decreased in value since the disclosure of PFC contamination in the area. The Volners obtain water from a municipal well which has tested positive for PFC contamination.

31.     Plaintiff James Volner has been exposed to high levels of PFC, and is at an increased risk of several health effects, including by not limited to effects on the liver and the immune system, high cholesterol, changes in thyroid hormone, as well as kidney, testicular and other cancers.

32.     Plaintiff James Volner has a legitimate fear of developing cancer and/or other diseases as a result of the PFC exposure he has sustained.

33.     Plaintiff Dawna Worcester is a citizen and resident of Merrimack, New Hampshire. She resides at 41 Wintergreen Drive, Merrimack New Hampshire, 03054. The property was purchased in 2012 and has decreased in value since disclosure of PFCs contamination in the area. Mrs. Worcester obtains water from a municipal well which has tested positive for PFC contamination.

34.     Plaintiff Dawna Worcester has been exposed to high levels of PFCs, and is at an increased risk of several health effects, including but not limited to effects on the liver and the immune system, high cholesterol, changes in thyroid hormone, as well as kidney and other cancers.

35.     Plaintiff Dawna Worcester has a legitimate fear of developing cancer and/or other diseases as a result of the PFC exposure she has sustained.

36.     Plaintiff Richard Slide is a citizen and resident of Merrimack, New Hampshire. He resides at 19 Clinton Court, Merrimack New Hampshire, 03054 with his wife Erin and their two (2) minor children. The property was purchased in 2005, and Richard and Erin have lived in Merrimack since March 1998. The property has decreased in value since disclosure of PFCs contamination in the area. The Slides obtain water from a municipal well which has tested positive for PFC contamination.

37.     Plaintiff Richard Slide has been exposed to high levels of PFCs, and is at an increased risk of several health effects, including but not limited to effects on the liver and the immune system, high cholesterol, changes in thyroid hormone, as well as kidney, testicular and other cancers.

38.     Plaintiff Richard Slide has a legitimate fear of developing cancer and/or other diseases as a result of the PFC exposure he has sustained.

39.     Plaintiff Erin Slide is a citizen and resident of Merrimack, New Hampshire. She resides at 19 Clinton Court, Merrimack New Hampshire, 03054 with her husband Richard and their two (2) minor children. The property was purchased in 2005, and Richard and Erin have lived in Merrimack since March 1998. The property has decreased in value since disclosure of PFCs contamination in the area. The Slides obtain water from a municipal well which has tested positive for PFC contamination.

40.     Plaintiff Erin Slide has been exposed to high levels of PFCs, and is at an increased risk of several health effects, including but not limited to effects on the liver and the immune system, high cholesterol, changes in thyroid hormone, as well as kidney, testicular and other cancers.

41.     Plaintiff Erin Slide has a legitimate fear of developing and/or other diseases as a result of the PFC exposure she has sustained.

42.     Plaintiffs Richard and Erin Slide's two (2) minor children, C.S. and M.S. are citizens of Merrimack, New Hampshire, and reside at 17 Clinton Court, Merrimack, NH 03054. The minor children have been exposed to high levels of PFC, and are at an increased risk of several health effects including but not limited to effects on the liver and the immune system, high blood pressure and cholesterol, as well as kidney, testicular and other cancers.

43.     Plaintiffs Richard and Erin Slide have a legitimate fear of their minor children developing cancer and/or other diseases as a result of the exposure they have sustained.

44.     Plaintiff Jonathan Kiley is a citizen and resident of Merrimack, New Hampshire. He resides at 17 Clinton Court, Merrimack, NH 03054 with his wife Jennifer and their four (4) children. The property was purchased in 2010. The property has decreased in value since the disclosure of PFC contamination in the area. The Kileys obtain water from a municipal well which has tested positive for PFC contamination.

8

45.     Plaintiff Jonathan Kiley has been exposed to high levels of PFCs, and is at an increased risk of several health effects, including but not limited to effects on the liver and the immune system, high cholesterol, changes in thyroid hormone, as well as kidney, testicular and other cancers.

46.     Plaintiff Jonathan Kiley has a legitimate fear of developing cancer and/or other diseases as a result of the PFC exposure he has sustained.

47.     Plaintiff Jennifer Kiley is a citizen and resident of Merrimack, New Hampshire. She resides at 17 Clinton Court, Merrimack, NH 03054 with her husband Jonathan and their four (4) children. The property was purchased in 2010. The property has decreased in value since the disclosure of PFC contamination in the area. The Kileys obtain water from a municipal well which has tested positive for PFC contamination.

48.     Plaintiff Jennifer Kiley has been exposed to high levels of PFOA has been diagnosed with High Blood Pressure and Cholesterol, and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, changes in thyroid hormone, and kidney and other cancers.

49.     Plaintiff Jennifer Kiley has a legitimate fear of developing cancers and/or other diseases as a result of the PFC exposure she has sustained.

50.     Plaintiffs Jonathan and Jennifer Kiley's four (4) minor children, A.K, K.K., E.K.1 and E.K.2 are citizens of Merrimack, New Hampshire, and reside at 17 Clinton Court, Merrimack, NH 03054. The minor children have been exposed to high levels of PFC, and are at an increased risk of several health effects including but not limited to effects on the liver and the immune system, high blood pressure and cholesterol, as well as kidney, testicular and other cancers.

51.     Plaintiffs Jonathan and Jennifer Kiley have a legitimate fear of their minor children developing cancer and/or other diseases as a result of the exposure they have sustained.

52.     Plaintiff Phyllis Provencher is a citizen and resident of Litchfield, New Hampshire, residing at 2 April Drive, Litchfield, NH 03052.  Phyllis Provencher owns the home, purchased in 1980, along with her husband Richard Provencher. The property has decreased in value since the disclosure of PFC contamination in the area. The Provencher's private well has tested positive for PFC contamination.

53.     Plaintiff April Provencher is a citizen and resident of Raymond, New Hampshire, residing at 22 Chester Road, Raymond, NH 03052. April Provencher lived at 2 April Drive, Litchfield, New Hampshire, at all times relevant herein. The private well at 2 April Drive receives water from a private well that has tested positive for PFC contamination.

54.     Plaintiff April Provencher has been exposed to high levels of PFC, and is at an increased risk of several health effects, including but not limited to effects on the liver and the immune system, high cholesterol, changes in thyroid hormone, and kidney and other cancers.

55.     Plaintiff April Provencher has a legitimate fear of developing cancer and/or other diseases as a result of the PFC exposure she has sustained.

56.     Plaintiff Phyllis Provencher has been exposed to high levels of PFC, and is at an increased risk of several health effects, including but not limited to effects on the liver and the immune system, high cholesterol, changes in thyroid hormone, and kidney and other cancers.

57.     Plaintiff Phyllis Provencher has a legitimate fear of developing cancer and/or other diseases as a result of the PFC exposure she has sustained.

58.     Plaintiff Richard Provencher is a citizen and resident of Litchfield, New Hampshire, residing at 2 April Drive, Litchfield, NH 03052. He has owned the property with his wife, Phyllis Provencher, since 1980, and the property has decreased in value since the disclosure of PFC contamination in the area. The Provencher's private well has tested positive for PFC contamination.

59.    Plaintiff Richard Provencher has been exposed to high levels of PFC, and is at an increased risk of several health effects, including by not limited to effects on the liver and the immune system, high cholesterol, changes in thyroid hormone, as well as kidney, testicular and other cancers.

60.    Plaintiff Richard Provencher has a legitimate fear of developing cancer and/or other diseases as a result of the PFC exposure he has sustained.

**DEFENDANT**

61.    When reference is made in this Complaint to any act or omission of the Defendant, it shall be deemed that the officers, directors, agents, employees or representatives of the Defendant committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendant, and did so while acting within the scope of their duties, employment or agency.

62.    Upon information and belief, the Defendant is responsible, negligently, intentionally and/or in some actionable manner, for the events and happenings referred to herein, and caused and continue to cause injuries and damages legally thereby to Plaintiffs, as alleged, either through the Defendant's own conduct or through the conduct of their agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

63.    Defendant SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION ("Saint-Gobain") is a foreign company with its principal place of business located at 750 East Swedesford Road, Valley Forge, Pennsylvania, doing business in the State of New Hampshire.

64.     Defendant Saint-Gobain is a multinational corporation based in Paris with more than 350 years of engineered material expertise. Defendant Saint-Gobain is one of the top 100 largest industrial companies in the world with $43.2 billion in sales and 193,000 employees in 64 countries

65.     Defendant Saint-Gobain is the world's leading producer of engineered, high-performance polymer products, serving virtually every major industry across the globe. Saint-Gobain businesses support these key industries in bringing advanced technology polymer products and using them in the most demanding applications.

66.     Defendant, at various times herein, and described more fully below, operated the Facility at 701 Daniel Webster Highway, Merrimack, New Hampshire.

## FACTUAL ALLEGATIONS AS TO ALL COUNTS

**PFOA Background**

67.     Perfluorooctanoic acid (PFOA, also known as C8 or perfluorooctanoate) is a man-made, manufactured chemical not found in nature that belongs to a group of fluorine-containing chemicals called perfluorinated chemicals. These chemicals were and are used to make household and commercial products that resist heat and chemical reactions, and repel oil, stains, grease, and water.

68.     In 1947, the Minnesota Mining and Manufacturing Company (3M) began producing PFOA via electrochemical fluorination.

69.     PFOA was once widely used in nonstick cookware, in surface coatings for stain-resistant carpets and fabric, and in paper and cardboard food packaging (such as microwave popcorn bags and fast food containers). PFOA was also used in fire-fighting foam and in many products for the aerospace, automotive, building/construction, and electronics industries.

70.     Over the years, a number of companies, including but not limited to, Arkema, Asahi, BASF, Clariant, Daikin, DuPont, and Solvay Selexis have manufactured PFOA within the United States.

71.     PFOA is a fluorine-containing chemical that is primarily used in the production of fluoropolymers such as poly-tetra-fluoro-ethylene ("PTFE"). Upon information and belief, PFOA was a component of the PTFE that was used at the Facility located at 701 Daniel Webster Highway, Merrimack, New Hampshire.

72.     PFOA is readily absorbed after consumption or inhalation, and it accumulates primarily in the blood stream, kidney and liver.

73.     In 2006, eight major PFOA manufacturers agreed to participate in the U.S. Environmental Protection Agency's ("EPA") PFOA Stewardship Program. The participating companies made voluntary commitments to reduce product content and facility emissions of PFOA and related chemicals by 95%, no later than 2010.

74.     As of May 2016, the EPA has issued Lifetime Health Advisories and Health Effects Support Documents for PFOA and PFOS.[2] The EPA identifies the concentration of PFOA or PFOS in drinking water at or below which health effects are not anticipated to occur over a lifetime of exposure at 70 parts per trillion. While health advisories are non-regulatory, they reflect the EPA's assessment of the best available peer-reviewed science.

75.     PFCs get into the environment from industrial facilities that make PFC or use PFCs to make other products. It also enters the environment when released from PFC-containing consumer products during their use and disposal.

76.     PFCs can remain in the environment, particularly in water, for many years. PFCs can move through soil and into groundwater, or be carried in air.

_____

[2] Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 101 (May 25, 2016)

77.     Human studies show associations between increased PFC levels in blood and an increased risk of several health effects, including effects on the liver, the immune system, high cholesterol levels, increased risk of high blood pressure, changes in thyroid hormone, ulcerative colitis (autoimmune disease), pre-eclampsia (a complication of pregnancy that includes high blood pressure), and kidney and testicular cancer.

78.     These injuries can arise months or years after exposure to PFCs.

79.     PFCs' extreme persistence in the environment and its toxicity, mobility and bioaccumulation potential, pose potential adverse effects to human health and the environment.

**PFCs in Merrimack and Litchfield**

80.     The facility located at 701 Daniel Webster Highway, Merrimack, New Hampshire (the "Facility") is approximately 21 acres. The building's combined working space is over 220,000 square feet, spread over four floors.

81.     Defendant Saint-Gobain purchased the facility in or around 2001, and has continuously owned and operated the property since then.

82.     Defendant Saint-Gobain is the current owner and operator of the Facility.

83.     In 2002, the Saint-Gobain Facility doubled in size when it decided to close its plant in Bennington, Vermont and move those operations to Merrimack.

84.     Upon information and belief, the exodus from Vermont was motivated by the fact that Vermont's pollution regulations were more demanding than New Hampshire's. Vermont required emissions abatement equipment called catalytic incinerators to clean up the emissions. New Hampshire did not require those incinerators.

85.     Upon information and belief, the Saint-Gobain facility has 15 towers which were used to coat fabric in polytetrafluoroethylene ("PTFE"), the compound used in Teflon.

86.     Upon information and belief, PFCs were used by Defendant Saint-Gobain at the Facility.

87.     Upon information and belief, Defendant discharged PFCs into the environment, including into the air and water, which subsequently contaminated the Merrimack and Litchfield water supply.

**Discovery of PFCs in Merrimack and Litchfield**

88.     The Merrimack Village District Water System (MVDWS) and the Town of Merrimack provide water to roughly 25,000 residents in Merrimack.

89.     The MVDWS provides water to over 87% of the town by servicing and maintaining 925,762 feet of pipe, 905 fire hydrants, 7 wells (6 active, 1 inactive), 3 water storage tanks and 2 booster stations. The MVDWS manages over 7,500 customer accounts, which include residents and businesses.[3]

90.     On February 26, 2016, Saint-Gobain reported to NHDES results of water tests at the Facility, which showed PFOA was detected in water supplied by MVDWS.

91.     On March 4, 2016, NHDES and Defendant Saint-Gobain announced an investigation into the presence of PFCs in drinking water in Merrimack.

92.     The week before, Saint-Gobain notified NHDES that PFCs were detected in samples taken from four water faucets within their Merrimack facility, which is served by the Merrimack Village District Water System.

93.     The EPA recommends that the lifetime Health Advisory for PFOA and PFOS levels of 70 ppt. apply to both short term (i.e. weeks to months) scenarios during pregnancy and lactation, as well as to lifetime exposure scenarios.[4]

---

[3] Merrimack Village District Water Works, *Annual Drinking Water Quality Report for 2015*
[4] Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 101 (May 25, 2016)

94.     On March 13, 2016, NHDES received the drinking water well test results from an initial round of testing for PFCs in Merrimack and Litchfield, New Hampshire. The test results showed levels of PFOA as high as 820 parts per trillion.

95.     As an interim measure, NHDES began providing bottled water to all properties within the investigation area that were served by private wells having PFOA levels above 0.1 ug/l (100 parts per trillion) on April 1, 2016.

96.     On April 7, 2016, the NHDES announced that bottled water delivery was expanded to approximately 400 properties in Merrimack and Litchfield that are served by private wells and are within and abutting a 1-mile radius of the Saint-Gobain Facility.

97.     On April 14, 2016, the NHDES announced that it had received preliminary sample results for groundwater and soil samples taken at the Saint-Gobain Facility. The groundwater test results were found to contain PFOA concentrations ranging from 280 ppt to 5,800 ppt.

98.     In a May 27, 2016 update, the NHDES revealed that over 127 private wells out of 366 sampled contained PFOA detected above the 70 ppt health advisory by the EPA.

99.     On July 22, 2016, test results revealed that smokestacks at the Saint-Gobain Facility were emitting PFOA, despite the chemical's phase out in 2014.

100.    Through a letter exchange with the NHDES, Defendant Saint-Gobain has agreed to:

    i.     fund the supply of bottled water to all residences within a 1 mile radius of the facility where PFOA has been detected in a private well above 100 parts per trillion ("ppt");

    ii.    reimburse the State of New Hampshire for all reasonable costs the State has incurred to date to provide residents living within the 1 mile radius with bottled water;

    iii.   conduct soil-sampling at designated locations near the Merrimack Facility where sensitive populations may exist (e.g., the schools, day care centers, and playgrounds on the list provided to Saint-Gobain);

    iv.   retain a qualified environmental consultant and to submit a work plan for a full site investigation of the Facility within 30 days, or as soon thereafter as is reasonably possible; and

     v.     implement the site investigation work plan once NHDES approves the plan, and to submit the results of the investigation to NHDES.[5]

101.    Groundwater wells tested within the Class Area have shown elevated concentrations of PFCs.

102.    At this time, it is not known how long Plaintiffs had been drinking municipal water contaminated with PFCs, nor what the PFC levels were prior to the first drinking water testing that was performed.

103.    Upon information and belief, Defendant ownership and operation at these properties have resulted in releases of PFCs into the surrounding environment, as samples in the MVDWS and private wells, which is proximate to and down gradient of the Facility, show elevated levels of PFCs.

104.    As a proximate result of the manner in which Defendant disposed of PFCs and discharged it into the environment, PFCs contaminated the Merrimack and Litchfield groundwater supply.

105.    The water contamination in Merrimack and Litchfield has made properties in the area less marketable and resulted in significant property devaluation.

106.    Defendant's discharge and release of PFCs into underground aquifers has caused Plaintiffs and the Class personal injuries and property damages.

## CLASS ACTION ALLEGATIONS

107.    Plaintiffs incorporate the forgoing paragraphs as though the same were set forth at length herein.

---

[5] April 13, 2016 Letter from Christopher R. Gibson, *PFOA Matters in Southern New Hampshire*, http://des.nh.gov/organization/commissioner/documents/pfoa-saint-gobain-response-20160413.pdf

108.    Plaintiffs bring this action as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed subclasses and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure, subject to amendment and additional discovery as follows:

      a.    all residents of the Merrimack and Litchfield Areas who have consumed water from the municipal water supply (the "Municipal Water Bodily Injury Class");

      b.    all residents of the Merrimack and Litchfield Areas who have consumed water from water supplied from private wells (the "Private Water Bodily Injury Class"); and

      c.    all owners of real property in the Merrimack and Litchfield Areas (the "Property Damage Class").

109.    Plaintiffs are members of both the proposed Bodily Injury and Property Damage Classes they seek to represent. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

110.    Excluded from the Class are:

      a.    Defendant, including any entity or division in which Defendant have a controlling interest, along with their legal representative, employees, officers, directors, assigns, heirs, successors, and wholly or partly owned subsidiaries or affiliates;

      b.    the Judge to whom this case is assigned, the Judge's staff, and the Judge's immediate family;

      c.    any class counsel or their immediate family members; and

      d.    all governmental entities.

111.    Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded, divided into additional subclasses, or modified in any other way.

**Numerosity and Ascertainability**

112.    This action meets the numerosity requirement of Fed. R. Civ. P. 23(a)(1), given that the number of impacted residents in the Merrimack and Litchfield Areas and property owners, upon information and belief, has reached the thousands, making individual joinder of class

members' respective claims impracticable. While the exact number of class members is not yet known, a precise number can be ascertained from U.S. Federal Census records, the State of New Hampshire, and the public records of the municipal entities in the Merrimack and New Hampshire area, and through other appropriate discovery. The resolution of the claims of the class members in a single action will provide substantial benefits to all parties and the Court. It is expected that the class members will number in the thousands.

113.    Finally, Class members can be notified of the pendency of this action by Court-approved notice methods.

**Typicality**

114.    Pursuant to Federal Rules of Civil Procedure 23(a)(3), Plaintiffs' claims are typical of the claims of class members, and arise from the same course of conduct by Defendant. Plaintiffs' persons and real property, like all Class Members, have been damaged by Defendant' misconduct in that they have incurred damages and losses related to the introduction of PFCs and other toxic substances into the groundwater supplies in the Merrimack and Litchfield Areas as well as private wells in the area, causing personal injury and property damages.

115.    Furthermore, the factual bases of Defendant' actions and misconduct are common to all Class Members and represent a common thread of misconduct resulting in common injury to all Class Members. The relief Plaintiffs seek is typical of the relief sought for absent Class Members.

**Adequacy of Representation**

116.    Plaintiffs will serve as fair and adequate class representatives as their interests, as well as the interests of their counsel, do not conflict with the interest of other members of the class they seek to represent. Further, Plaintiffs have retained counsel competent and well experienced in class action litigation and environmental tort litigation.

117.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither the Plaintiffs nor their counsel have interests adverse to the Class.

**Predominance of Common Issues**

118.    There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, making it appropriate to bring this action under Rule 23(b)(3). The answers to these common questions will advance resolution of the litigation as to all Class Members. These common legal and factual issues include the following:

a.      Whether Defendant engaged in the conduct alleged herein;

b.      Whether Defendant knew or should have known that exposure to PFCs could increase health risks;

c.      Whether Defendant knew or should have known that products used at the Facility contained persistent, stable and mobile chemicals, namely PFCs, that were likely to contaminate groundwater water supplies;

d.      The extent to which Defendant knew about the PFC contamination in the water in the Merrimack and Litchfield area;

e.      The extent to which Defendant knew about the PFC contamination in the municipal groundwater supply in the Merrimack and Litchfield Areas;

f.      The extent to which Defendant knew about the PFC contamination in the water supplied to private wells of residents of the Merrimack and Litchfield Areas;

g.      Whether the Defendant owed a duty to the Plaintiffs and the Class to refrain from the actions that caused the contamination of the drinking water with PFCs;

h.      Whether Defendant made unlawful and misleading representations or material omissions with respect to the health impacts of PFC;

i.      For the Bodily Injury Classes, whether any health issue or bodily injury of Plaintiffs and the Class are attributable to exposure of PFCs in the water supply;

j.      For the Property Damage Classes, whether the PFC contamination caused and continues to cause:

    i.      a continuous invasion of the property rights of the Plaintiffs and Class such that the property values in the Merrimack and Litchfield Areas have and/or continue to decline in value following the disclosure of the PFC contamination;

    ii.     have substantially interfered with Plaintiffs' and the Class' use and enjoyment of their property;

k.      Whether Plaintiffs and Class Members are entitled to damages and other monetary relief and other equitable relief, including but not limited to punitive damages, and if so, in what amount;

l.      Whether the members of the Classes have sustained damages and the proper measure of damages;

m.      Whether Defendant are strictly liable to Plaintiffs and the Class for their actions;

n.      Whether Defendant were unjustly enriched by their actions at the expense of Plaintiffs and the classes.

**Superiority**

119.    The class action mechanism is superior to any other available means of the fair and efficient adjudication of this case. Further, no unusual difficulties are likely to be encountered in the management of this class action. Given the great number of Merrimack and Litchfield Areas residents impacted by Defendant' conduct, it is impracticable for Plaintiffs and the Class to

individually litigate their respective claims for Defendant' complained of conduct as to do so would risk inconsistent or contradictory judgments and increase delays and expense to both parties and the court system. Therefore, the class action mechanism presents considerably less management challenges and provides the efficiency of a single adjudication and comprehensive oversight by a single court

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION:
### NEGLIGENCE

120. Plaintiffs hereby repeat, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

121. This cause of action is brought pursuant to New Hampshire law.

122. Defendant knew or should have known that exposure to PFOA was hazardous to the environment and to human health.

123. Defendant knew or should have known that the manner in which they were handling and/or disposing PFOA would result in the contamination of the groundwater supply in the Merrimack and Litchfield Areas.

124. Defendant knew or should have known that safety precautions would be required to prevent the release of PFOA into the surrounding environment.

125. Defendant knew or should have known that it was unsafe and/or unreasonably dangerous to dispose of the PFOA contaminated material in the ways in which they did.

126. Defendant, as owners and operators of the Facility that utilized PFOA, owed Plaintiffs a cognizable duty to exercise reasonable care to ensure that contaminated substances at the Facility were disposed of reasonably and properly so as not to discharge hazardous or toxic substances, including PFOA, into the environment.

127.    Defendant owed Plaintiffs a duty to ensure that the manufacturing processes they employed would not unreasonably jeopardize the drinking water supply (both the municipal and private wells) relied upon by the Merrimack and Litchfield community.

128.    Upon learning of the release of the contaminants, Defendant owed Plaintiffs a duty to act reasonably to remediate, contain, and eliminate the contamination before it injured Plaintiffs and Plaintiffs' property and/or to act reasonably to minimize the damage to Plaintiffs and Plaintiffs' property.

129.    Defendant breached their duty by allowing PFOA to be released into the drinking water (both the municipal and private wells) of Merrimack and Litchfield when they unreasonably disposed of PFC contaminated material in such a manner that ensured the PFCs would enter into the environment and groundwater.

130.    Defendants breached their duty of care to Plaintiffs by failing to do what reasonable prudence would require under similar circumstances.

131.    As such, the Defendant, negligently, gross negligently, recklessly, willfully, wantonly, and/or intentionally created the contamination of drinking water in and around the Plaintiffs' residence.

132.    Defendant further breached the duties owed to the Plaintiffs by failing to take reasonable, adequate, and sufficient steps or actions to eliminate, correct, or remedy any contamination after it occurred.

133.    Defendant' failure to notify the Plaintiffs in a timely manner of the contamination of the Merrimack and Litchfield drinking water, and, consequently, the presence of PFCs in the real property of Plaintiffs constitutes another breach of the duties that Defendant owed the Plaintiffs.

134. Defendant' breaches of their duties were direct and proximate causes of Plaintiffs' damages and the imminent, substantial, and impending harm to their home and health.

135. Defendant' breaches of their duties caused the drinking water in both the municipal and private wells to become contaminated with unsafe and dangerous levels of PFCs.

136. Further, due to Defendant' breach of their duty to timely notify the community and act reasonably in handling and/or disposing of PFC contaminated material, Plaintiffs was forestalled from undertaking effective and immediate remedial measures, and Plaintiffs has expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendant' negligence for many years into the future.

137. Plaintiffs suffered foreseeable injuries and damages as a direct and proximate result of said Defendant' negligent breach of their duties as set forth above. At the time Defendant breached their duties to Plaintiffs, Defendant' acts and/or failures to act posed recognizable and foreseeable possibilities of danger to Plaintiffs so apparent as to entitle Plaintiffs to be protected against such actions or inactions.

138. Accordingly, Plaintiffs seek damages from Defendant, in an amount to be determined at trial, directly resulting from their injuries to their persons and property, in a sufficient amount to compensate Plaintiffs for the injuries and losses sustained and to restore Plaintiffs to the original position, including but not limited to the difference between the current value of Plaintiffs' property and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injuries to persons, including the need for medical monitoring as an element of damages, and actual, consequential, and nominal damages, flowing from the negligence which are the natural and proximate result of Defendant' conduct in an amount to be proved at trial.

## AS AND FOR A SECOND CAUSE OF ACTION:
## <u>TRESPASS</u>

139.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

140.    This cause of action is brought pursuant to the laws of New Hampshire.

141.    Plaintiffs, as described above, are the owner of real property with the right of possession.

142.    At all times relevant to the present cause of action, Defendant had exclusive control over the Facility which, through acts and/or omissions by Defendant in the handling and/or disposal of material contaminated with PFOA and other chemicals, resulted in the contamination of the water supply relied upon by Plaintiffs at all relevant times.

143.    At the time the above-described, affirmative, voluntary, and intentional acts were performed by Defendant, Defendant had good reason to know or expect that large quantities of PFCs would and/or could be introduced into the persons and property of Plaintiffs.

144.    The above-described affirmative, voluntary, and intentional acts were performed with the willful intent to cause PFCs to be disbursed through the water and onto the land and property of Plaintiffs.

145.    Defendant' negligent, reckless, willful, and/or wanton actions and/or intentional failures to act caused an unknown quantity of PFCs to be released into the groundwater relied upon by Merrimack and Litchfield.

146.    Defendant' willful, wanton, and intentional failure to act and/or their affirmative choices of actions and following courses of actions have caused PFCs to enter and trespass upon the land and realty of the Plaintiffs and cause an injury to the possession and/or right of possession.

147.     Plaintiffs has not consented and does not consent to the trespass and contamination alleged herein. Defendant knew or reasonably should have known that the Plaintiffs did not and does not consent to this trespass.

148.     These voluntary actions resulted in the immediate and continued trespass, injury and damage to Plaintiffs, Plaintiffs' property and the right of possession of their property.

149.     Further, Defendant' actions in introducing unknown quantities of PFCs into the groundwater of Merrimack and Litchfield, consequently, the persons and property of Plaintiffs were done with actual malice, and in wanton, willful and/or reckless disregard for Plaintiffs' rights, health, and property.

150.     Additionally and/or alternatively, Defendant' decisions to delay and the resulting delay in taking any affirmative action to eliminate, correct, and/or remedy the PFC release and contamination after having knowledge and notice of said contamination were done with actual malice, and in wanton, willful and/or reckless disregard for the rights, health, and property of Plaintiffs.

151.     Accordingly, Plaintiffs seeks general damages from Defendant, in an amount to be determined at trial, directly resulting from their injuries in a sufficient amount to compensate them for the injuries and losses and to restore Plaintiffs to the original position, including but not limited to the difference between the current value of the property and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injury to persons which includes but is not limited to the need for medical monitoring and direct, consequential, and nominal damages flowing from the nuisance and trespass which are the natural and proximate result of Defendant' conduct in an amount to be proved at trial.

## AS AND FOR A THIRD CAUSE OF ACTION:
## <u>STRICT LIABILITY</u>

152.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

153.    In the alternative for the First Cause of Action, set forth above, Plaintiffs brings this claim pursuant to New Hampshire law.

154.    Defendant's manufacturing, operational, and disposal practices as it related to material contaminated with PFC and/or other ultra-hazardous toxins were negligent, reckless, and/or intentional and constituted an ultra-hazardous or abnormally dangerous activity for which Defendant are strictly liable.

155.    The Defendant manufacture, use, mishandling, and disposal of material that contained PFCs was inappropriate, given PFCs' toxicity and danger to human health, at the Facility due to the Facility's proximity to the sources of drinking water (both municipal and private wells).

156.    As a result, Defendant allowed or caused these ultra-hazardous and abnormally dangerous substances to leach into the land and ground water surrounding the Facility, including the potable water supply relied upon by Plaintiffs.

157.    Further, Defendant's contamination of the potable water supply with PFCs creates the likelihood for personal injury and property damage to individuals who use and rely upon the water.

158.    Defendant manufacture, use, mishandling, and disposal of PFCs and their reckless disregard for the consequences of their actions caused the existence of a high degree of harm to both the Plaintiffs and Plaintiffs' property. Given the nature of PFCs, the likelihood of this harm was great.

159.    The risk of such activities outweighs any value associated with the same. As the result of the said ultra-hazardous or abnormally dangerous activities, Plaintiffs has suffered damages and imminent, substantial, and impeding harm to their health, their families, to the value of their home and property, and Plaintiffs has expended or will be forced to expend significant resources to safeguard Plaintiffs' health and property, obtain monitoring, testing, remediating services or equipment, as well as health monitoring indefinitely for years and decades into the future.

160.    By reason of the foregoing, Defendant is strictly liable in tort for personal injury and property damage sustained by Plaintiffs.

161.    Accordingly, Plaintiffs seeks general damages from Defendant, in an amount to be determined at trial, directly resulting from the Plaintiffs' injuries in a sufficient amount to compensate for the injuries and losses and to restore Plaintiffs to the original position, including, but not limited to the difference between the current value of the property and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injury to persons, including medical monitoring, and direct, consequential, and nominal damages flowing from the nuisance and trespass which are the natural and proximate result of Defendant' conduct in an amount to be proved at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION:

### PRIVATE NUISANCE

162.    Plaintiffs hereby repeat, reallege, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

163.    This cause of action is brought pursuant to New Hampshire law.

164.    Defendant' reckless, intentional and unreasonable, abnormally dangerous, and/or negligent acts and omissions, as alleged above, resulted in the discharge of PFCs into the

environment, contaminating the municipal and private wells from which the Plaintiffs obtained drinking water.

165.    The discharge of PFCs into the environment resulted in the contamination of the village's groundwater and water supply with hazardous levels of PFCs, and has substantially and unreasonably interfered with the use and enjoyment of Plaintiffs' property.

166.    The contamination of the groundwater and water supply has prevented and continues to prevent Plaintiffs from consuming or using the water at the property or residence and constitutes a substantial interference with the right of Plaintiffs and the property.

167.    The inability to use potable drinking water at their residences has caused the Plaintiffs significant inconvenience and expense.

168.    By reason of the foregoing, Defendant are liable to Plaintiffs for the damages that suffered as a result of Defendant' actions, the amount of which will be determined at trial, plus reasonable attorneys' fees and costs.

169.    Accordingly, Plaintiffs seeks general damages from Defendant, in an amount to be determined at trial, directly resulting from the injuries in a sufficient amount to compensate for the injuries and losses and to restore Plaintiffs to the original position, including, but not limited to the difference between the current value of the property and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injury to persons, including the need for medical monitoring, and direct, consequential, and nominal damages flowing from the nuisance and trespass which are the natural and proximate result of Defendant' conduct in an amount to be proved at trial.

## ENHANCED COMPENSATORY DAMAGES

170.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

171.    Upon information and belief, Defendant engaged in, wanton, malicious, and or/oppressive conduct that caused the foregoing property damage, nuisances, and trespasses upon the persons and properties of Plaintiffs, disregarding protected rights.

172.    Defendant' wanton, malicious, and or/oppressive conduct includes but is not limited to Defendant' failure to take all reasonable measures to ensure PFC-containing waste would be effectively disposed of and not discharged into the surrounding environment.

173.    Defendant have caused great harm to the property and water supplies of Plaintiffs and demonstrated an outrageous conscious disregard for safety with implied malice, warranting the imposition of enhanced exemplary damages.

## DECLARATORY AND INJUNCTIVE RELIEF

174.    Since Defendant have acted or refused to act on grounds generally applicable to Plaintiffs, final injunctive and declaratory relief is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demands judgment against Defendant, and each of them, jointly and severally, and request the following relief from the Court:

A.    an award certifying the proposed Bodily Injury and Property Damage Classes, designating Plaintiffs as the named representatives and designating the undersigned as Class Counsel;

B.      a declaration that Defendant acted with negligence, gross negligence, and/or wanton, malicious, and or/oppressive disregard for the health, safety, and property of Plaintiffs and members of the Class;

C.      an order requiring that Defendant implement a testing and monitoring protocol to test each property and its drinking water for the properties belonging to the members of the Property Damage Class and, where appropriate, to implement appropriate remedial measures;

D.      an order establishing a medical monitoring protocol for Plaintiffs and the Bodily Injury Class;

E.      an award to Plaintiffs and the Class of general, compensatory, exemplary, consequential, nominal, and punitive damages;

F.      an order for an award of attorney fees and costs, as provided by law;

G.      an award of pre-judgment and post-judgment interest as provided by law, and

H.      an order for all such other relief the Court deems just and proper.

## **<u>JURY DEMAND</u>**

Plaintiffs demand a trial by jury of any and all issues in this matter so triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**NAPOLI SHKOLNIK PLLC**

By: /s/ Hunter Shkolnik
Hunter Shkolnik (NYBar#2031458) *PHV pending*
Paul J. Napoli, (NYBar#2513141) *PHV pending*
Louise Caro, (NYBar#0633380) *PHV pending*
360 Lexington Avenue, Eleventh Floor
New York, NY, 10017
(212) 397-1000
hunter@napolilaw.com
pnapoli@napolilaw.com
lcaro@napolilaw.com

**NIXON VOGELMAN BARRY SLAWSKY SIMONEAU P.A.**

By: /s/ Kirk Simoneau
Kirk Simoneau, #19291
Lawrence A. Vogelman, #10280
77 Central Street
Manchester, NH 03101
(603) 669-7070
ksimoneau@davenixonlaw.com
lvogelman@davenixonlaw.com

*Attorneys for Plaintiffs and the putative classes*

December 5, 2016